UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

BERNARD P. GOLD and MAURICIO F. GOLD,

              Plaintiff,

                                       COMPLAINT AND
- against -                             JURY TRIAL DEMAND

P.O. HYONJIN HA, Shield No. 14905,
P.O. COLLADO, P.O. CORDOVA, Shield No. 20580,
LIEUTENANT "JOHN DOE," "RICHARD ROE,"
"MORRIS MOE," GEORGE INNES,
QUEENS BALLPARK COMPANY, L.L.C. and
THE CITY OF NEW YORK,

              Defendants.

-------------------------------------------------------------------------X

      Plaintiffs, BERNARD P. GOLD and MAURICIO F. GOLD, by their attorney, ALAN

D. LEVINE, ESQ., complaining of the defendants herein, respectfully allege as follows:

## JURISDICTION

    1.    This is a civil action, seeking compensatory damages, punitive damages,

a permanent injunction and attorney's fees.

    2.    This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the

first, fourth, and fourteenth amendments to the Constitution of the United States.

    3.    Jurisdiction is founded upon 28 U.S.C. §§1331, 1343 and 1367.

    4.    Plaintiffs, invoking the supplemental jurisdiction of this Court, also seek

compensatory and punitive damages for false arrest and battery.

## VENUE

    5.    Venue is properly alleged in the Eastern District of New York in that the

acts complained of herein occurred within this District.

## JURY TRIAL DEMAND

6.     Plaintiffs hereby demand a trial by jury of all issues in this action that are so triable.

## PARTIES

7.     At all times relevant hereto, plaintiff BERNARD P. GOLD was and is a natural person, resident in the County of Queens, City and State of New York.

8.     At all times relevant hereto, plaintiff MAURICIO F. GOLD was and is a natural person, and was resident in the County of Queens, City and State of New York.

9.     Plaintiffs BERNARD P. GOLD and MAURICIO F. GOLD are father and son, respectively.

10.     At all times relevant hereto, defendant P.O. HYONJIN HA, Shield No. 14905, (hereinafter "HA") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

11.     At all times relevant hereto, defendant P.O. COLLADO (hereinafter "COLLADO") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

12.     At all times relevant hereto, defendant P.O. CORDOVA, Shield No. 20580, (hereinafter "CORDOVA") was and is a natural person, employed as a police officer by the Police Department of defendant CITY OF NEW YORK.

13.     At all times relevant hereto, defendant LIEUTENANT "JOHN DOE" was and is a natural person, employed as a lieutenant by the Police Department of defendant CITY OF NEW YORK.

14.     At all times relevant hereto, defendant "RICHARD ROE" (hereinafter "ROE") was and is a security supervisor, upon information and belief employed by defendant QUEENS BALLPARK.

15.     At all times relevant hereto, defendant "MORRIS MOE" (hereinafter "MOE") was and is a security supervisor, upon information and belief employed by defendant QUEENS BALLPARK.

16.     At all times relevant hereto, defendant GEORGE INNES was and is a security supervisor, upon information and belief employed by defendant QUEENS BALLPARK.

17.     At all times relevant hereto, defendant QUEENS BALLPARK COMPANY, L.L.C., (hereinafter "QUEENS BALLPARK") was and is a domestic limited liability company with its principal office for the conduct of business located in the County of Queens.

18.     At all times relevant hereto, defendant QUEENS BALLPARK was an entity created by the New York Mets, which leased Citi Field (the Mets' ballpark) from the Industrial Development Agency of defendant CITY OF NEW YORK.     As such, defendant QUEENS BALLPARK was the employer of those defendants hereto who were employed as security supervisors at Citi Field on the date of the incident alleged herein.

19.     At all times relevant hereto, defendant CITY OF NEW YORK was and is a municipal corporation, organized and existing pursuant to the laws of the State of New York.

20.     The individual defendants are sued in their individual capacities.

21.     On or about August 5, 2015, this date being within ninety (90) days after the claims herein sued upon accrued, plaintiffs served upon the Comptroller of the City of New York a verified written notice of claim setting forth the time, place, nature and manner in which said claims arose.

22.     More than thirty (30) days have elapsed since the aforementioned verified notice of claim was served and the Comptroller has neglected and refused to make payment of said claims.

23.     This action is commenced within one year and ninety days from the date the supplemental claims herein accrued.

## AS AND FOR A FIRST CAUSE OF ACTION
## ·ON BEHALF OF PLAINTIFFS
## AGAINST THE INDIVIDUAL DEFENDANTS
## (42 U.S.C. §1983)

24.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "23" hereinabove as if more fully set forth at length herein.

25.     On or about May 27, 2015, in the afternoon, plaintiffs were lawfully present at a New York Mets baseball game being played at Citi Field, which is a stadium located at 120-01 Roosevelt Avenue, Flushing, County of Queens, City and State of New York.

26.     Plaintiffs had purchased their tickets at the same day sales window located at the aforementioned stadium.

27.     Plaintiffs were originally seated in the second row of section 421, on the promenade level of the aforementioned stadium.

28.     At some point during the game, plaintiffs moved up to the last row of regular seating in section 421 as the day was very sunny and an overhang provided them with some shade.

29.     Immediately behind the row in which plaintiffs were now sitting was an area upon information and belief reserved for seating persons utilizing wheelchairs and other assistive devices.

30.     A person seated behind plaintiffs spilled water on them.

31.     Plaintiff BERNARD P. GOLD had a brief verbal exchange with the person who had spilled water on them.

32.     Shortly after the aforementioned argument, the same person once again spilled water on plaintiffs.

33.     This time, plaintiff BERNARD P. GOLD went to the corridor that runs behind the promentade level seating area and informed a security guard, bearing a name tag identifying him as "Carmine," that he and his son had twice had water spilled on them.

34.     Carmine suggested that they move.

35.     Plaintiffs agreed to move to different seats.

36.     Plaintiffs returned to their seats to retrieve any personal items they may have left on or beneath them.

37.     As plaintiff BERNARD P. GOLD was checking to make sure he had left nothing on his seat, defendant ROE approached plaintiffs and ordered them to immediately leave the area where they were seated.

38.    Taken aback by defendant ROE's attitude, plaintiff BERNARD P. GOLD said to him, "I don't understand your attitude. You just arrived. You don't even know what's going on."

39.    Defendant ROE replied, "I know all I need to know. You have to leave."

40.    Plaintiff MAURICIO F. GOLD now stated to defendant ROE, "You know, we were just about to leave but you are acting like an asshole."

41.    Defendant ROE replied, "Now you are getting ejected."

42.    Defendant ROE, using a walkie-talkie, called for police to come to the location where the verbal exchange had just taken place.

43.    Plaintiffs remained where they were.

44.    Within a few minutes, defendants HA and COLLADO arrived at plaintiffs' seats.

45.    Defendant ROE, referring to plaintiffs, instructed defendants HA and COLLADO to, "Take them out of here."

46.    Defendants HA and COLLADO, accompanied by defendant ROE, walked plaintiffs to an elevator.

47.    While waiting for the elevator to arrive, plaintiff BERNARD P. GOLD asked defendant ROE for his name.

48.    Defendant ROE refused to give plaintiff BERNARD P. GOLD his name.

49.    Plaintiffs and defendants HA and COLLADO rode down in the elevator to the ground level of the stadium.

50.    While they were riding down in the elevator with defendants HA and COLLADO, plaintiffs said to defendants HA and COLLADO that they had done nothing wrong and had not been bothering anyone.

51.     Defendant COLLADO responded, referring to Carmine and defendant ROE, "We work for them.  We have to do what they tell us."

52.     When plaintiffs and defendants HA and COLLADO exited the elevator, plaintiff BERNARD P. GOLD was approached by defendant MOE.

53.     Defendant MOE approached plaintiff BERNARD P. GOLD and demanded he give him the tickets that he had purchased for the game.

54.     Plaintiff BERNARD P. GOLD asked defendant MOE why he wanted his tickets, informing him that he wanted to keep the tickets as he had paid for them and they were his proof that he had purchased them and had been at the ball game.

55.     Defendant MOE now turned to defendants HA and COLLADO and told them to obtain the tickets.

56.     Defendant HA began putting on gloves, stating to plaintiff BERNARD P. GOLD, "If you do not give me the tickets, it is going to get ugly."

57.     Plaintiff BERNARD P. GOLD replied, "That's unnecessary.  I want to keep my tickets.  It does not have to get ugly.  I want to leave.  The door is right here."

58.     Plaintiff BERNARD P. GOLD took one step towards the exit door, at which point defendant HA grabbed plaintiff BERNARD P. GOLD's left arm, forcefully twisted it behind his back, pushed him against a wall and rear-handcuffed him.

59.     Plaintiff MAURICIO F. GOLD, who was standing approximately fifteen feet away from where defendant HA was assaulting his father, took out his cell phone and commenced to record what was happening to his father.

60.     As he was recording, plaintiff MAURICIO F. GOLD stated into the cell phone's audio, "I am here at Citi Field.  Officer Ha is using unnecessary force."

61.     Defendant HA walked over to plaintiff MAURICIO F. GOLD and smacked his cell phone out of his hand, knocking it to the floor and breaking it.

62.     Defendants HA and COLLADO now grabbed hold of plaintiff MAURICIO F. GOLD and, with the assistance of defendant MOE, attempted to force him down to the floor.

63.     Plaintiff MAURICIO F. GOLD was rear-handcuffed, upon information and belief by defendant COLLADO.

64.     Plaintiffs were now taken into a New York City Police Department facility located on the ground level of Citi Field which, upon information and belief, is a satellite of the 110th Precinct.

65.     Plaintiffs were instructed to stand in front of the desk located in the aforementioned police facility while they were searched.

66.     Defendants HA and COLLADO removed plaintiffs' possessions from their pockets.

67.     Plaintiffs were locked inside a holding cell.

68.     While they were in the holding cell, plaintiff BERNARD P. GOLD was approached by defendant CORDOVA, who handed him a letter, printed on New York Mets stationery, a copy of which is annexed hereto as Exhibit "A" and is deemed incorporated in this complaint.

69.     The letter notified plaintiff BERNARD P. GOLD that he was "prohibited from entering the premises and surrounding area of Citi Field in Flushing, New York, Municipal Credit Union Park in Brooklyn, New York, and Tradition Field in Port St. Lucie, Florida, for any reason, whether or not you are in possession of a ticket."

70.     Upon information and belief the aforementioned venues are baseball stadiums controlled by the New York Mets.

71.     The letter went on to state that if plaintiff BERNARD P. GOLD was "found on any of these premises at any time, you will be considered a trespasser and will be evicted and/or subject to arrest."

72.     The aforementioned letter was signed by defendant INNES on behalf of Robert J. Kasdon, who is identified therein as "Vice President Security."

73.     Plaintiff BERNARD P. GOLD refused to countersign the aforementioned letter that had been handed to him by defendant CORDOVA.

74.     While they were confined to the aforementioned cell, plaintiffs were approached by defendant LIEUTENANT JOHN DOE who had the following conversation with plaintiff BERNARD P. GOLD:

Defendant LIEUTENANT JOHN DOE:  "We can do this the easy way or the hard way."

Plaintiff BERNARD P. GOLD:  "I don't know what you mean."

Defendant LIEUTENANT JOHN DOE:  "The hard way is you get arrested.

Plaintiff BERNARD P. GOLD:  "For what?"

Defendant LIEUTENANT JOHN DOE:  "Are you going to listen?"

Plaintiff BERNARD P. GOLD:  "Okay."

Defendant LIEUTENANT JOHN DOE:  "You get arrested.  You go to Central Booking.  You spend the night in jail and then you go to court."

Plaintiff BERNARD P. GOLD:  "What's the easy way?"

Defendant LIEUTENANT JOHN DOE:  "You get a summons."

Plaintiff BERNARD P. GOLD:  "For what?"

Defendant LIEUTENANT JOHN DOE: "Okay, you are getting arrested."

Plaintiff BERNARD P. GOLD: "Okay. I will take the summons."

75.    After approximately thirty to sixty minutes, during which they remained confined in the aforementioned holding cell, each plaintiff was handed a summons, signed by defendant CORDOVA, charging him with trespass, a violation.

76.    Upon his release from the aforementioned holding cell, plaintiff BERNARD P. GOLD was given back his personal property. However, the tickets that he had purchased to attend the ballgame had been removed from his wallet without his consent and were not returned to him.

77.    The aforementioned summonses were returnable in Criminal Court of the City of New York, County of Queens on July 20, 2015.

78.    When plaintiffs appeared in court on the aforementioned return date, plaintiff MAURICIO F. GOLD was informed that his case had already been dismissed because of what he was informed was a "mistake in the paperwork."

79.    Plaintiff BERNARD P. GOLD appeared before a judge and received an adjournment in contemplation of dismissal.

80.    The charge against plaintiff BERNARD P. GOLD has subsequently been dismissed and sealed.

81.    Subsequent to the aforementioned incident, during which, as described hereinabove, defendant HA had twisted his left arm, plaintiff BERNARD P. GOLD noticed that he was experiencing, for the first time in his life, pain and limitation of motion in his left shoulder.

82.    An MRI taken on December 23, 2015, revealed a full thickness tear of the surpaspinatus tendon on plaintiff BERNARD P. GOLD's left side. In other words,

plaintiff BERNARD P. GOLD, as a result of being assaulted by defendant HA, had suffered what is commonly referred to as a rotator cuff tear.

83.   The individual defendants, each of whom was acting under color of state law, as hereinabove described, violated plaintiffs' rights, guaranteed to them by the first, fourth and fourteenth amendments to the Constitution of the United States, as follows:

Defendant HA violated plaintiff MAURICIO F. GOLD's right to record and comment on the arrest of plaintiff BERNARD P. GOLD, guaranteed to him by the first amendment to the Constitution of the United States, by slapping plaintiff MAURICIO F. GOLD's cell phone out of his hand, thereby causing it to fall to the floor and break while said plaintiff was recording the arrest of plaintiff BERNARD P. GOLD in a manner that did not interfere with defendant HA's arrest of plaintiff BERNARD P. GOLD;

Defendant HA violated plaintiff BERNARD P. GOLD's rights to be arrested only with probable cause and to be free of the use of excessive force, guaranteed to him by the fourth amendment to the Constitution of the United States, in that, acting pursuant to the direction of defendants ROE and MOE, he placed him under arrest without having probable cause to do so and twisted his left arm with such force and violence as to tear the rotator cuff thereof;

Defendants HA, COLLADO and ROE violated plaintiff MAURICIO F. GOLD's right to be free of the use of excessive force and to be arrested only with probable cause, guaranteed to him by the fourth and fourteenth amendments to the Constitution of the United States, in that they physically assaulted him, handcuffed him and placed him under arrest without having any probable cause whatsoever to do so;

Defendant LIEUTENANT "JOHN DOE," in violation of the fourth and fourteenth amendments to the Constitution of the United States, violated the right of plaintiffs to be

arrested only with probable cause in that he falsely and maliciously charged them with trespass, a violation of the New York Penal Law;

Defendants CORDOVA and INNES violated plaintiff BERNARD P. GOLD's right to the freedom of movement and association guaranteed to him by the first and fourteenth amendments to the Constitution of the United States in that they conspired to prohibit him from attending any future home games of the New York Mets at Citi Field in New York or at Tradition Field in Florida and of the Brooklyn Cyclones in Brooklyn, New York, without due process.

84.    Because of the aforementioned acts committed against them by the individual defendants hereto, plaintiff BERNARD P. GOLD suffered a deprivation of his right to be arrested, confined, charged and prosecuted only with probable cause therefor, his right not to be subjected to excessive and unnecessary force and his right to freedom of movement and association, all guaranteed to him by the first, fourth and fourteenth amendments to the Constitution of the United States, and as a result, suffered a loss of his liberty; was rendered sick, sore, lame and disabled; was severely and permanently injured; required and will continue to require medical treatment for his injuries; and incurred expenses for legal representation.

85.    Because of the aforementioned acts committed against him by the individual defendants hereto, plaintiff MAURICIO F. GOLD suffered a deprivation of his right to be arrested, confined, charged and prosecuted only with probable cause; his right not to be subjected to excessive and unnecessary force; his right to videotape police activity when not interfering with the actions of police officers and the right not to have his property damaged; all guaranteed to him by the first, fourth and fourteenth amendments to the Constitution of the United States, and, as a result, suffered a loss of

his liberty, suffered damage to his personal property and incurred expenses for legal representation.

86.     By reason of the aforementioned unconstitutional and illegal actions taken against them by the individual defendants hereto, each plaintiff has been damaged in an amount sufficient to compensate him for his injuries as enumerated hereinabove and, in addition, seeks punitive damages against the individual defendants.

### AS AND FOR A SECOND CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF BERNARD P. GOLD
### AGAINST DEFENDANTS HA, ROE, MOE, COLLADO
### CORDOVA, LIEUTENANT JOHN DOE,
### <u>QUEENS BALLPARK and THE CITY OF NEW YORK</u>
### (False Arrest)

87.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "86" hereinabove as if more fully set forth at length herein.

88.     On or about May 27, 2015, in the afternoon, at Citi Field, which is a stadium located at 120-01 Roosevelt Avenue, Flushing, County of Queens, City and State of New York, defendants ROE and MOE, without probable cause therefor, caused and directed plaintiff BERNARD P. GOLD to be forcibly, wrongfully and unlawfully arrested by defendants HA, COLLADO, CORDOVA and LIEUTENANT "JOHN DOE."

89.     Defendants HA and COLLADO handcuffed plaintiff BERNARD P. GOLD and placed him in a holding cell located in a New York City Police Department facility located on the ground level of Citi Field.

90.     Defendants CORDOVA and LIEUTENANT JOHN DOE falsely, maliciously, wrongfully, unlawfully and illegally accused plaintiff BERNARD P. GOLD of trespass, a violation of the New York Penal Law.

91.     At the time they committed the aforesaid acts of false arrest and false imprisonment, defendants ROE, MOE, HA, COLLADO, CORDOVA and LIEUTENANT JOHN DOE were acting within the scope of their respective employment by defendants QUEENS BALLPARK or CITY OF NEW YORK.

92.     By reason of the false arrest and false imprisonment committed against him by defendants ROE, MOE, HA, COLLADO, CORDOVA and LIEUTENANT JOHN DOE, while they were acting within the scope of their employment by either defendant QUEENS BALLPARK or defendant CITY OF NEW YORK, plaintiff BERNARD P. GOLD suffered a loss of his liberty; was severely and permanently injured in his left arm; required and will continue to require medical treatment; incurred expenses for legal representation; and incurred, and will continue to incur, expenses for medical treatment.

93.     As a result of the false arrest and false imprisonment committed against him by defendants ROE, MOE, HA, COLLADO, CORDOVA and LIEUTENANT JOHN DOE, while they were acting within the scope of their employment by defendants QUEENS BALLPARK and/or CITY OF NEW YORK, plaintiff BERNARD P. GOLD has been damaged in an amount sufficient to compensate him for his injuries as enumerated hereinabove and, in addition, seeks punitive damages against defendants ROE, MOE, HA, COLLADO, CORDOVA, LIEUTENANT JOHN DOE and QUEENS BALLPARK.

**AS AND FOR A THIRD CAUSE OF ACTION
ON BEHALF OF PLAINTIFF MAURICIO F. GOLD
AGAINST DEFENDANTS HA, ROE, MOE, COLLADO
CORDOVA, LIEUTENANT JOHN DOE,
<u>QUEENS BALLPARK and THE CITY OF NEW YORK</u>
(False Arrest)**

94. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "93" hereinabove as if more fully set forth at length herein.

95. On or about May 27, 2015, in the afternoon, at Citi Field, which is a stadium located at 120-01 Roosevelt Avenue, Flushing, County of Queens, City and State of New York defendants ROE and MOE, without probable cause therefor, caused and directed plaintiff MAURICIO F. GOLD to be forcibly, wrongfully and unlawfully arrested by defendants HA, COLLADO, CORDOVA and LIEUTENANT JOHN DOE.

96. Defendants HA and COLLADO handcuffed plaintiff MAURICIO F. GOLD and placed him in a holding cell located in a New York City Police Department facility located on the ground level of Citi Field.

97. Defendants CORDOVA and LIEUTENANT JOHN DOE falsely, maliciously, wrongfully, unlawfully and illegally accused plaintiff MAURICIO F. GOLD of trespass, a violation of the New York Penal Law.

98. At the time they committed the aforesaid acts of false arrest and false imprisonment, defendants ROE, MOE, HA, COLLADO, CORDOVA and LIEUTENANT JOHN DOE were acting within the scope of their respective employment by defendants QUEENS BALLPARK or CITY OF NEW YORK.

99. By reason of the false arrest and false imprisonment committed against him by defendants ROE, MOE, HA, COLLADO, CORDOVA and LIEUTENANT JOHN DOE, while they were acting within the scope of their employment by either defendant QUEENS BALLPARK or defendant CITY OF NEW YORK, plaintiff MAURICIO F. GOLD suffered a loss of his liberty and incurred expenses for legal representation.

100.    As a result of the false arrest and false imprisonment committed against him by defendants ROE, MOE, HA, COLLADO, CORDOVA and LIEUTENANT JOHN DOE, while they were acting within the scope of their employment by defendants QUEENS BALLPARK and/or CITY OF NEW YORK, plaintiff MAURICIO F. GOLD has been damaged in an amount sufficient to compensate him for his injuries as enumerated hereinabove and, in addition, seeks punitive damages against defendants ROE, MOE, HA, COLLADO, CORDOVA, LIEUTENANT JOHN DOE and QUEENS BALLPARK.

### AS AND FOR A FOURTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF BERNARD P. GOLD
### AGAINST DEFENDANT HA
### and THE CITY OF NEW YORK
### (Battery)

101.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "100" hereinabove as if more fully set forth at length herein.

102.    On or about May 27, 2015, in the afternoon, plaintiff BERNARD P. GOLD was present on the ground floor of Citi Field, which is a stadium located at 120-01 Roosevelt Avenue, Flushing, County of Queens, City and State of New York, when defendant HA, without any probable cause whatsoever, offensively touched plaintiff BERNARD P. GOLD by intentionally grabbing and twisting his left arm in such a manner as to cause a tear in his left rotator cuff.

103.    The aforementioned force used by defendant HA was not reasonable under the circumstances.

104.    At the aforementioned time and place, defendant HA was acting within the scope of his employment by defendant CITY OF NEW YORK.

105.   By reason of the aforementioned battery committed against him by defendant HA, while he was acting within the scope of his employment by defendant CITY OF NEW YORK, plaintiff BERNARD P. GOLD was rendered sick, sore, lame and disabled; was severely and permanently injured in his left arm; required and will continue to require medical treatment; and incurred, and will continue to incur, expenses for medical treatment.

106.   As a result of the battery committed upon him by defendant HA, while he was acting within the scope of his employment by defendant CITY OF NEW YORK, plaintiff BERNARD P. GOLD has been damaged in an amount sufficient to compensate him for his injuries as enumerated hereinabove and, in addition, seeks punitive damages against defendant HA.

### AS AND FOR A FIFTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF MAURICIO F. GOLD
### AGAINST DEFENDANT HA and
### THE CITY OF NEW YORK
### (Intentional Destruction of Property)

107.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "106" hereinabove as if more fully set forth at length herein.

108.   On or about May 27, 2015, in the afternoon, plaintiff MAURICIO F. GOLD was present on the ground floor of Citi Field, which is a stadium located at 120-01 Roosevelt Avenue, Flushing, County of Queens, City and State of New York, when defendant HA intentionally and maliciously smacked plaintiff MAURICIO F. GOLD's cell phone out of his hand while plaintiff MAURICIO F. GOLD was recording defendant HA assaulting his father, plaintiff BERNARD P. GOLD, thereby causing the screen of plaintiff MAURICIO F. GOLD's phone to shatter.

109.    At the time he caused the aforementioned damage to plaintiff MAURICIO F. GOLD's cell phone, defendant HA was acting within the scope of his employment by defendant CITY OF NEW YORK.

110.    As a result of the aforementioned destruction of property intentionally and maliciously caused by defendant HA, while he was acting in the course of his employment by defendant CITY OF NEW YORK, plaintiff MAURICIO F. GOLD has been damaged in the amount of $250.00 and, in addition, seeks punitive damages against defendant HA.

### AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANTS QUEENS BALLPARK and CITY OF NEW YORK (42 U.S.C. §1983)

111.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "110" hereinabove as if more fully set forth at length herein.

112.    At all times relevant hereto, and for a period of several years prior to the incident alleged herein, defendants CITY OF NEW YORK and QUEENS BALLPARK maintained policies, practices, customs and usages that were a direct and proximate cause of the unconstitutional conduct alleged herein.

113.    Upon information and belief, at all times relevant hereto and for a period of several years prior thereto, defendants CITY OF NEW YORK and QUEENS BALLPARK were parties to a written agreement, the terms of which were a direct and proximate cause of the unconstitutional conduct alleged herein.

114.    Pursuant to the hereinabove alleged policies, practices, customs, usages and written agreement, police officers employed by defendant CITY OF NEW YORK

would substitute the judgment of employees of defendant QUEENS BALLPARK for their own and would thus act pursuant to their direction.

115. As a direct result of the aforementioned policies, practices, customs, usages and written agreement, defendant COLLADO informed plaintiffs that he and defendant HA worked for defendants ROE and MOE and had to do what they told them to do.

116. Consequently, plaintiffs' arrest, imprisonment and criminal charges were all the result of directions given to defendants HA, COLLADO, CORDOVA and LIEUTENANT JOHN DOE by defendants ROE, MOE and INNES pursuant to the aforementioned policies, practices, customs, usages and written agreement.

117. One of the police officer defendants confiscated the tickets to the game that plaintiff BERNARD P. GOLD had in his cell phone wallet and defendant CORDOVA, acting at the behest of QUEENS BALLPARK employee defendant INNES, handed plaintiff BERNARD P. GOLD an agreement that he was to sign, printed on New York Mets stationery, barring him for life from Citi Field, Municipal Credit Union Park and Tradition Field, all of which are venues, upon information and belief, controlled by the New York Mets.

118. By implementing, enforcing, encouraging, sanctioning, ratifying and/or entering into agreements to enforce the aforementioned policies, and/or customs, defendants CITY OF NEW YORK and QUEENS BALLPARK caused plaintiffs to be subjected to false arrest, excessive force, and damage to personal property, all without due process of law, in violation of the rights guaranteed to them by the first, fourth and fourteenth amendments to the Constitution of the United States.

119.    By directing members of the Police Department of defendant CITY OF NEW YORK to arrest plaintiffs and to enforce policies of defendant QUEENS BALLPARK with regard to plaintiffs, defendants ROE, MOE and INNES, thereby acted under color of state law.

120.    As the result of the foregoing, plaintiffs were deprived of their liberty, subjected to excessive force resulting in serious and permanent injury to plaintiff BERNARD P. GOLD, suffered damage to personal property belonging to plaintiff MAURICIO F. GOLD, and suffered a deprivation of their freedom of movement and association by being prohibited from attending baseball games at Citi Field, Municipal Credit Union Park and Tradition Field.

121.    As a result of the aforementioned denials of the rights guaranteed to them by the first, fourth and fourteenth amendments to the Constitution of the United States, defendants CITY OF NEW YORK and QUEENS BALLPARK, and their agents, servants and employees, have damaged plaintiffs in an amount sufficient to compensate them for their injuries as enumerated hereinabove and have deprived plaintiffs of their freedom of movement and association.

WHEREFORE, plaintiffs, BERNARD P. GOLD and MAURICIO F. GOLD, demand judgment against defendants, P.O. HYONJIN HA, P.O. COLLADO, P.O. CORDOVA, LIEUTENANT "JOHN DOE," "RICHARD ROE," "MORRIS MOE," GEORGE INNES, QUEENS BALLPARK COMPANY, L.L.C. and THE CITY OF NEW YORK, as follows:

FIRST CAUSE OF ACTION:    An amount sufficient to compensate them for their injuries as enumerated hereinabove and, in addition, seek punitive damages against the individual defendants;

SECOND CAUSE OF ACTION:   An amount sufficient to compensate them for their injuries as enumerated hereinabove and, in addition, seek punitive damages against defendants HA, ROE, MOE, COLLADO, CORDOVA, LIEUTENANT JOHN DOE, QUEENS BALLPARK and THE CITY OF NEW YORK;

THIRD CAUSE OF ACTION:      An amount sufficient to compensate them for their injuries as enumerated hereinabove and, in addition, seek punitive damages against defendants HA, ROE, MOE, COLLADO, CORDOVA, LIEUTENANT JOHN DOE, QUEENS BALLPARK and THE CITY OF NEW YORK.

FOURTH CAUSE OF ACTION:   An amount sufficient to compensate them for their injuries as enumerated hereinabove and, in addition, seek punitive damages against defendant HA.

FIFTH CAUSE OF ACTION:       An amount sufficient to compensate them for their injuries as enumerated hereinabove and, in addition, seek punitive damages against defendant HA.

SIXTH CAUSE OF ACTION:       An amount sufficient to compensate them for their injuries as enumerated hereinabove and, in addition, request an order of this court permanently enjoining defendants, their agents, servants and employees, from preventing plaintiffs' attendance at baseball games played at Citi Field, Municipal Credit Union Park and Tradition Field, and from ejecting them from the aforementioned stadiums based upon an allegation of violation of the written prohibition delivered to plaintiff BERNARD P. GOLD by defendant CORDOVA at the behest of defendant INNES.

In addition, plaintiffs demand the costs and disbursements of this action, including their attorney's fees, pursuant to 42 U.S.C. §1988.

Dated:  Kew Gardens, New York
         July 11, 2016

ALAN D. LEVINE, ESQ.
Attorney for Plaintiffs
80-02 Kew Gardens Road, Suite 307
Kew Gardens, New York 11415
(718) 793-6363
Our File No. 2328

EXHIBIT "A"



May 27, 2015

**VIA HAND DELIVERY**

Bernard P. Gold
138-55 Hoover Avenue
Jamaica, NY 11435

Re:     Trespass Notification and Warning

Dear Mr. Gold:

You are hereby notified that you are prohibited from entering the premises and surrounding area of Citi Field in Flushing, New York, Municipal Credit Union Park in Brooklyn, New York, and Tradition Field in Port St. Lucie, Florida, for any reason, whether or not you are in possession of a ticket.  If you are found on any of these premises at any time, you will be considered a trespasser and will be evicted and/or subject to arrest.

If have any questions regarding this letter, you may contact Robert J. Kasdon, Vice President of Security, at (718) 507-6387.

Sincerely,

Robert J. Kasdon
Vice President, Security

X _Refused_
Addressee, by signing above, acknowledges receipt of letter.

Witness